UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| JADE BLASINGAME | CIVIL ACTION NO. 6:24-CV-00779 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE CO | MAGISTRATE JUDGE DAVID J. AYO |

## REPORT AND RECOMMENDATION

Before the Court is a MOTION TO REMAND filed by Plaintiff Jade Blasingame. (Rec. Doc. 9). Defendant State Farm Mutual Automobile Insurance Agency opposes the motion. (Rec. Doc. 15). Blasingame filed a timely reply. (Rec. Doc. 16). The undersigned issues the following report and recommendation pursuant to 28 U.S.C. § 636. Considering the evidence, the law, and the parties' arguments, and for the reasons explained below, the Court recommends that the instant motion be DENIED.

## Factual Background

This suit arises from a motor vehicle accident on LA 92 in Lafayette Parish, Louisiana on August 2, 2021. (Rec. Doc. 1-1, ¶ 3). Blasingame was driving a Ford F150 pickup truck when Maiquis Popillion, who was operating a Toyota Camry owned by Gabrielle Vincent, crossed the center line and collided into Blasingame's vehicle. (*Id.*). Before filing suit Blasingame settled with Popillion (who had no other insurance in effect at the time of the accident), and Vincent (for the $15,000 policy limits under her State Farm policy). (Rec. Doc. 1-1, ¶ 7). Blasingame then filed suit against State Farm in the 15th Judicial District Court on July 24, 2023, alleging that her damages exceed the amount of insurance coverage issued by State Farm to

Vincent and that she is thus entitled to Underinsured/Uninsured Motorist ("UM") coverage under a State Farm automobile insurance policy in place at the time of the accident. (*Id.*, generally).

Blasingame's suit alleges the accident was caused solely by Popillion's fault and seeks damages for past and future pain and suffering, past and future mental anguish, disfigurement, medical expenses, loss of income and earning capacity, and disability. (*Id.* at ¶ 6). Blasingame additionally demands the full policy limits of her UM coverage as well as penalties and fees as provided under La. R.S. § 22:1973 but did not specify the amount of UM coverage or attach a copy of the applicable policy to the petition. (*Id.* generally and at ¶ 9).

State Farm removed the case to this court on June 7, 2024. (Rec. Doc. 1). State Farm alleges diversity jurisdiction as the basis for removal, claiming complete diversity of citizenship and an amount in controversy exceeding $75,000, exclusive of costs and interest. (*Id.*). Based on the record, the Court is satisfied that the parties are diverse in citizenship.[1] The instant motion challenges removal jurisdiction based on the amount in controversy and, in the alternative, the timeliness of the removal. (Rec. Doc. 7).

## Law and Analysis

Federal district courts have original jurisdiction over cases involving a federal question pursuant to 28 U.S.C. §1331, and those in which the parties are diverse in

---

[1] Blasingame is a Louisiana citizen and State Farm is a mutual insurance company domiciled in Illinois with its principal place of business in Illinois. (Rec. Docs. 6 and 8).

citizenship and the amount in controversy exceeds $75,000 pursuant to 28 U.S.C. §1332. Courts may also exercise or decline to exercise supplemental jurisdiction over certain cases. 28 U.S.C. §1367; *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 804, 810 (5th Cir. 2007). A notice of removal may assert the amount in controversy if the plaintiff's initial pleading seeks a money judgment, but Louisiana law does not permit demand for a specific sum. 28 U.S.C. § 1446(c)(2)(A)(ii); La. Code Civ. P. art. 893. Removal of such an action is proper on the basis of an amount in controversy asserted in the notice of removal "if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds" $75,000 exclusive of interest and costs. 28 U.S.C. §§ 1446(c)(2)(B) and 1332(a). The burden is on the removing party to show that removal is proper, and any doubts should be resolved against federal jurisdiction. *Vantage Drilling Co. v. Hsin-Chi Su*, 741 F.3d 535, 537 (5th Cir. 2014).

### *Amount in Controversy*

A defendant may satisfy his burden on the amount in controversy issue by: (1) demonstrating that it is "facially apparent" that the claims likely exceed $75,000, or (2) setting forth the facts in controversy—in the notice of removal or an affidavit—that support a finding of the requisite amount. *Luckett v. Delta Airlines*, 171 F.3d 295, 298 (5th Cir. 1999); *Simon v. Kansas City S. Ry. Co.*, 2021 WL 6331972 (W.D. La. Dec. 22, 2021). Where, as here, another party opposes removal by contesting the amount in controversy, both sides must submit evidence as to the amount in

controversy from which the court determines jurisdiction under 28 U.S.C. § 1332. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014).

State Farm argues that the amount in controversy exceeds the jurisdictional threshold of $75,000 when

> considering the amount remaining in dispute under the State Farm policy, the nature of the injuries alleged in the Petition accompanied by the length of treatment Petitioner is attempting to relate to this accident, Petitioner's refusal to admit or stipulate that the amount of damages she is claiming she is entitled to recover is less than $75,000 excluding any prior payments received by the Petitioner for this claim, as well as Petitioner's claims for penalties and/or attorney's fees.

(Rec. Doc. 1, ¶13).

As noted above, Blasingame's petition alleges:

> severe, painful, and permanent injuries including but not limited to her head, neck, shoulders, ribs, back, and body, together with internal injuries, as well as injuries to her bones, joints, muscles, nerves, soft tissues, circulatory system, as a result of which she was rendered disabled and has been and continues to be incapacitated from and prevented from pursing her usual and ordinary activities and duties, and her ability to engage in recreational activities was lessened, diminished and affected, and consequently has and will sustain medical expenses, as well as other incidental expenses.

(Rec. Doc. 1-2 at ¶ 5).

Blasingame further asserts that State Farm received satisfactory proof of loss and "arbitrarily, capriciously, and without probable cause failed to pay the policy limit amount due for Petitioner's claim within sixty (60) days of their receipt" and is thus liable "not only for the policy limit and damages, but it is also liable for penalties and fees as provided under LSA-R.S. 22:1973." (Rec. Doc. 1-1).

4

Blasingame argues that the "present 'credit'[2] to which State Farm is entitled, $86,885.24, combined with the jurisdiction limit of $75,000.00, creates a threshold level of $161,885.24 for the requisite damages before the jurisdictional limit is reached." (Rec. Doc. 9-1, at p. 3). Blasingame then attempts to discount her damages as possibly being less than $75,000:

> Currently, Plaintiff is still undergoing treatment with a chiropractor whom she has been seeing regularly since August 4, 2021. Plaintiff has approximately $46,720.80 in medical expenses through May 29, 2024, for chiropractic treatment, but no presently calculable wage loss claim. Plaintiff has been treating with a chiropractor for neck, thoracic, low back and shoulder pain, as well as a dysfunction of the rib cage involving a recurring dislocation of the rib. There have been no recommendations from Plaintiff's chiropractor for diagnostic procedures, injections or surgery, nor have there been referrals to any medical doctor for further evaluation. State Farm has had Plaintiff undergo a medical evaluation on March 12, 2024, with a doctor of State Farm's own choosing who expressed an opinion that any treatment for "cervical strain, lumbar strain, and an exacerbation of cervical degenerative disease" beyond three months was unrelated to the subject accident. In other words, State Farm's doctor, while not disputing the existence and nature of the complaints, did not recommend referral for "diagnostic procedures, injections or surgery." By State Farm's own admission, post-removal, in a recently received letter of July 1, 2024, State Farm has determined no additional tender is due at this time based upon the opinions of Dr. Ferachi.

(Rec. Doc. 9-1 at 4-5) (footnotes omitted).

---

[2] It is undisputed that the policy limit of Blasingame's UM coverage is $250,000.00, that State Farm has tendered $70,885.24 to Blasingame, and thus that $179,114.76 remains in uninsured/underinsured benefits under the policy. (Rec. Docs. 1, ¶ 12, 9-1, p. 3). It is also undisputed that the value of the claim, at the time of removal, would not include the $15,000 tendered in settlement by the tortfeasor, the $1,000 in medical payments portion of Blasingame's State Farm policy, nor the $70,885.24 in unconditional UM tenders paid by State Farm.

While discounting her damages, Blasingame attempts to keep open the possibility of recovering more than $75,000 because she paid "higher limits of UM coverage" and states:

> that a binding stipulation admitting the amount in controversy is below $75,000.00 (considering offsets and credits) would possibly serve to reduce the available insurance coverage limits should plaintiff's condition possibly deteriorate or otherwise change, which would defeat the purpose of purchasing UM insurance. As plaintiff is still undergoing treatment, determining future damages values at this time is speculative.

(Rec. Doc. 16 at 2).

The Court finds that State Farm's Notice of Removal and brief opposing the instant motion reveal appropriate effort at determining the nature and extent of Blasingame's claimed injuries and damages. (Rec. Docs. 1, 15). State Farm propounded discovery aimed at learning, *inter alia*, the nature and extent of Blasingame's medical treatment and expenses incurred and whether Blasingame was claiming damages in excess of $75,000. (Rec. Doc. 9-6, p. 2.). In September 2023, Blasingame responded as follows to an interrogatory from State Farm:

> Plaintiff objects to this Interrogatory, on grounds that Art. 893 A (1) does not require Plaintiff to itemize all damages which she claims in this lawsuit other than in the matter set forth in the Petition for Damages. At this time, no determination has been made whether the amount claimed is in excess of $75,000.00, Plaintiff trusts that the jury to be selected in this case will do the right thing based on the evidence produced during the trial of this matter.

(*Id.*)

Blasingame continued her medical treatment and regularly sent reports and bills to State Farm. (Rec. Doc. 15 at 2). At State Farm's request, Dr. David Ferachi

6

evaluated Blasingame on March 21, 2024 and noted in his report that two days after the accident Blasingame established care at Gibson Chiropractic Clinic in Opelousas, Louisiana complaining of trapezius pain, cervical pain, thoracic pain, headaches, low back pain, SI joint pain, sacral pain, and buttock pain and that her visits totaled 278 from August 4, 2021, to January 31, 2024.[3] (Rec. Doc. 1-5).  Dr. Ferachi noted that the chiropractic report states that "Jade is showing no change in condition and treatment," and opined that Blasingame had likely reached maximum medical improvement three months post-accident, and that her prognosis was poor given her continued complaints. (Rec. Doc. 1-5).

After receiving the report, State Farm propounded Requests for Admission to determine whether Blasingame's damages exceeded the $75,000 jurisdictional threshold. (Rec. Doc. 1-6).  On May 9, 2024, Blasingame responded as follows:

> Plaintiff objects to the subject Request for Admission of Fact, insofar as the topic addressed is not a factual thing subject of being admitted or denied. The value of the Plaintiff's claim is an uncertainty and is not established factually until such a time as a judge or jury renders judgment based on the evidence produced during the trial of this matter or the parties reach an amicable settlement which specifically designates a value to the claim.
> ***
> Subject to these objections, at this time no determination has been made whether the amount claimed is in excess of $75,000.00.

(Rec. Doc. 1-7).

---

[3] State Farm's Notice of Removal includes a Superbill from Gibson Chiropractic dated August 1, 2021, thru May 29, 2024, totaling $46,720.80. (Rec. Doc. 1-4).  Blasingame asserted in the instant motion filed on July 5, 2024 that chiropractic treatment is ongoing. (Rec. Doc. 9-1 at 4).

7

In response, on that same date, State Farm tendered an Irrevocable and Binding Stipulation to Blasingame asking her to stipulate that she was not seeking more than $75,000 in additional damages from State Farm. (Rec. Doc. 1-8). Blasingame refused to execute the stipulation. State Farm then requested to take Blasingame's deposition to clarify the issue and was told that Blasingame would not be available until August 9, 2024—after the removal deadline.[4] (Rec. Doc. 1, ¶ 11).

The instant motion contends that State Farm's Notice of Removal failed to establish the amount in controversy by a preponderance of the evidence. (Rec. Doc. 9-1 at 4). In so arguing, Blasingame erroneously allocates a burden to State Farm that it did not bear at the time of removal. The Supreme Court in *Dart*, *supra*, explained that a defendant's notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount in controversy is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." 574 U.S. at 89. Drawing upon the House Judiciary Committee's Report on the Jurisdiction and Venue Clarification Act of 2011, the Court determined that the proper procedure for clarifying a contested amount in controversy is for the parties to

---

[4] Blasingame argues that the deposition was noticed in May before she denied the request for admission rather than in April in response to the denial of the request for admission as stated by State Farm. Blasingame further states: "[nowhere] in any correspondence regarding the scheduling of Plaintiff's deposition was a statement made by the Defendant that the purpose of taking of her was to clarify Defendant's ability to remove the case." (Rec. Doc. 9-1, p.7). Blasingame does not refute State Farm's allegations that it tried to depose her and was told that she was unavailable until August 9, 2024, subsequent to the removal deadline.

8

submit evidence of the amount in controversy upon which the court may make a jurisdictional fact finding according to the preponderance standard. *Id.* at 88-89.

Blasingame's motion is insufficient under the *Dart* standard, as it fails to offer any evidence of the amount in controversy. While it is well established that a plaintiff may not state the exact numerical value of his damages in his petition under Louisiana law, plaintiffs are allowed to allege "for other purposes," including federal jurisdiction, whether their claim exceeds or is less than the requisite amount. *Bolyer v. Circle H Trucking of Ashley, L.L.C.*, 2018 WL 4868963, *3, n. 9 (W.D. La. 2018) (citing La. Code Civ. P. art. 893). In addition, Article 893 does allow a plaintiff to allege in a petition that the amount in controversy is less than the jurisdictional amount. Blasingame did not do so here.

Any such information concerning Blasingame's damages is in her sole possession, so a response stating an inability to indicate one way or the other whether her damages exceed $75,000 because they have "not yet been determined" does not reflect a good faith effort. *Holden v. Daniyarov*, 2022 WL 2424638 (W.D. La. Jan. 24, 2022) (citing *Draper v. U.S. Fid. & Guar. Co.*, 2000 WL 268565, *2 (S.D. Miss. 2000)). Had Blasingame truly sought to remain in state court, then she should have given a "straight-forward response to the request for admission." *Id.* Instead, Blasingame submits conflicting statements. She admits that the chiropractor has recommended no further treatment from a medical doctor but expresses an intention to continue treatment with that chiropractor. She continually refuses to stipulate that the claim does not exceed the $75,000 threshold, stating that "Plaintiff purchased UM

9

insurance for protection and paid premiums. State Farm Should not benefit from a request for stipulation that coverage against possible future damages would be so limited, which in principle serves only to harm its insured." (Rec. Doc. 9-1, p. 8*).*

In this Court's view, State Farm's Notice of Removal set forth the facts in controversy that support a finding of the requisite amount. The notice relies on the amount remaining in dispute under the State Farm policy, the nature of the injuries alleged in the Petition, the length of treatment Blasingame is attempting to relate to this accident, Blasingame's refusal to admit or stipulate that the amount of damages she is claiming she is entitled to recover is less than $75,000 (excluding any prior payments received), and Blasingame's claims for penalties and/or attorney's fees. Although a plaintiff's refusal to enter into a stipulation on the amount in controversy may not, alone, justify removal, it is a relevant factor for the court's consideration in discerning the amount in controversy. *Johnson v. Dillard Dep't Stores, Inc.*, 836 F. Supp. 390, 394 (N.D. Tex. 1993). Similarly, Blasingame's omission of an Article 893 allegation as discussed above, alone, is insufficient to establish the amount in controversy, but the omission is entitled to "some consideration" in the inquiry. *Wells v. Toms*, 2022 WL 2425783 (W.D. La. Jan. 28, 2022), *Davis v. LeBlanc*, 2017 WL 4399275, at \*2 (W.D. La. October 2, 2017). In addition, Blasingame's delay in allowing State Farm to engage in discovery to learn of the nature and scope of her claimed injuries and damages is not, alone, sufficient to justify removal, but this Court finds such conduct relevant, particularly when, as here, Blasingame seeks to

remand a suit on the basis that State Farm failed to provide the very information she withheld.

Here, this Court finds State Farm appropriately alleges that Blasingame's claims met the amount in controversy requirement for diversity jurisdiction under Section 1332. Blasingame's challenge to State Farm's assertion of jurisdiction is unsupported and, in this Court's view, an abuse of motion practice that has likely added unjustified expense to this litigation. For these reasons, this Court will recommend that the instant motion be denied as it relates to the amount in controversy.

### *Timeliness of Removal*

Generally, a defendant may remove a case within thirty days of service of a pleading indicating that removal is proper. 28 U.S.C. §1446(b)(1). When the initial pleading does not indicate whether removal is proper, the defendant may remove the case within thirty days "after receipt…through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. §1446(b)(3).

In *Bosky v. Kroger Texas, LP*, 288 F.3d 208, 210 (5th Cir. 2002), the Fifth Circuit discussed the differing standards for removal based upon the initial pleading under Section 1446(b)(1) and removal based upon the receipt of subsequent pleadings or "other paper" under Section 1446(b)(3). Under Section 1446(b)(1), the 30-day time limit commencing with the initial pleading is triggered "only when that pleading

11

*affirmatively reveals on its face* that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court." *Id.* (emphasis in original). Under Section 1446(b)(3), the 30-day time limit commencing with the receipt of subsequent pleading, or "other paper" is triggered by receipt of information which is "unequivocally clear and certain." Holding that the latter standard is clearer than the former, the court reasoned:

> This clearer threshold promotes judicial economy. It should reduce "protective" removals by defendants faced with an equivocal record. It should also discourage removals before their factual basis can be proven by a preponderance of the evidence through a simple and short statement of the facts. In short, a bright-line rule should create a fairer environment for plaintiffs and defendants.

*Id.* at 211.

Additionally, in the context of Section 1446(b)'s "other paper" doctrine, "a case becomes removable only when a 'voluntary act' of the plaintiff makes it ascertainable for the first time that a case is removable." *Sins v State Farm Ins. Co.*, 2020 WL 5032051 (M.D. La. August 10, 2020) (citing *Schaefer v. Kodiak Mfg., Inc.*, 2011 WL 1656081, at *3 (E.D. La. May 2, 2011); *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996)).

After arguing in the instant motion that the amount in controversy does not meet the jurisdictional amount, Blasingame offers several alternative arguments as to why removal was untimely. First, Blasingame claims that State Farm's removal was not timely because it was not filed within 30 days of April 1, 2024, when her counsel sent additional medical records and bills to State Farm. (Rec. Doc. 15 at 7).

Second, Blasingame asserts that if the May 9, 2024 response to the request for admission triggered removal then her response to the interrogatory propounded on September 14, 2023, stating "at this time, no determination has been made whether the amount claimed is in excess of $75,000.00" should have started the removal clock. Third, citing cases regarding the amount in controversy, Blasingame argues that her unwillingness to provide a stipulation is not determinative. (Rec. Doc. 9-1 at 7) (citing *Jones v. Env't Oil Recovery*, 2022 WL 366228, at *3 (W.D. La. Jan. 21, 2022, for proposition that plaintiff has no obligation to stipulate to damages below $75,000 and that failure to do so is a factor for court to consider).

The Petition does not *affirmatively reveal on its face* that Blasingame is seeking damages in excess of the minimum jurisdictional amount for federal jurisdiction.[5] Accordingly, the 30-day time limit commencing with the receipt of a subsequent pleading, or "other paper" is triggered by receipt of information which is "unequivocally clear and certain." *Cole ex rel. Ellis v. Knowledge Learning Corp.,* 416

---

[5] In her reply, Blasingame asserts that if "Plaintiff's allegations of entitlement to the policy limits of $250,000.00 are being used as evidence that the amount in controversy was over $75,000.00 when the Petition was filed on July 24, 2023, then State Farm should have timely filed to remove the matter to federal court within 30 days of being served on August 4, 2023. This is true because both State Farm and Plaintiff were parties to the same contractual policy of insurance and State Farm knew the policy limits." (Rec. Doc. 16, p. 9). The Fifth Circuit has rejected a "due diligence" standard that would require a defendant to inquire as to the amount in controversy, *i.e.*, inquire as to the limits of Blasingame's insurance policy, and has instead set out a bright line rule that the initial pleading must affirmatively reveal on its face that a plaintiff is seeking damages in excess of the minimum jurisdictional amount. *See generally Kingham v. Target Corp. of Minn.*, 2013 WL 142518, at *2 (W.D. La. Jan. 11, 2013) (citing *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir. 1992) for proposition that "a defendant is not obligated to exercise due diligence to ascertain the judicial amount in controversy.").

F. App'x 437, 440 (5th Cir. 2011). The Court finds that neither the medical records nor Blasingame's ambiguous response to the September 14, 2023, requests for admissions trigger the 30-day time limit. An "other paper" which requires a defendant's "independent research in order to ascertain the amount in controversy," is not "unequivocally clear and certain." *Id*. Further, other courts have noted that an "other paper" is not "clear and unequivocal" if determining the amount in controversy requires a defendant to conduct additional investigation, dissect medical records, or examine previous jury awards. *See Elkins v. Bradshaw*, 2019 WL 2096126, at *4, (M.D. La. Apr. 24, 2019) ("[I]f a defendant has to analyze and dissect medical treatment records to divine whether the nature and cause of a plaintiff's injuries satisfy the amount in controversy requirement, then those papers do not suffice to trigger the 30 day time period."); *Chandler v. Ruston La. Hosp. Co.*, LLC, 2014 WL 1096365, at *5 (W.D. La. March 19, 2014) (stating that a defendant need not "analyze and dissect medical treatment records" to determine the amount disputed); S*mith v. Wal-Mart La., LLC*, 2013 WL 4781778 (W.D. La. Sept. 5, 2013) (finding that recommendation for cervical disc surgery, in the absence of a specific damages estimate, did not trigger second 30-day removal period).

      Blasingame's initial medical records and discovery response fail to provide any further information to set forth the grounds for removal. Additionally, at this point, the amount of treatment undergone was limited to chiropractic care, albeit well over 278 visits from August of 2021 to January 2023, as were the medical expenses incurred. (Rec. Doc. 1-4). Thus, it was not "unequivocally clear or certain" that the

grounds for removal existed at the time the first set of medical records was received. *See Bosky*, 288 F.3d at 211.

Instead, it became "unequivocally clear and certain" that the amount in controversy was in excess of the jurisdictional threshold on May 9, 2024, when Blasingame refused to admit or deny the Request for Admission regarding the amount in controversy and refused to sign the Irrevocable and Binding Stipulation limiting her recovery to $75,000. This voluntary act on Blasingame's part triggered the 30-day time clock.

Based on the totality of the record, State Farm has shown that removal was timely and federal jurisdiction exists.

## Conclusion

For the reasons discussed herein, the Court recommends that the MOTION TO REMAND (Rec. Doc. 9) filed by Plaintiff Jade Blasingame be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by

Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.

**THUS DONE** in Chambers, Lafayette, Louisiana on this 13th day of January, 2025.

_____
**DAVID J. AYO**
**UNITED STATES MAGISTRATE JUDGE**